554 S.E.2d 533 (2001)
251 Ga. App. 380
In the Interest of J.M. et al., children.
No. A01A1119.
Court of Appeals of Georgia.
August 27, 2001.
Joseph I. Carter, Tifton, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy,
*534 Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Atty. Gen., Simpson & Cross, Melanie B. Cross, for appellee.
MILLER, Judge.
Following a hearing, a juvenile court terminated Theresa's parental rights to her minor sons, J.M. and J.W. The question on appeal is whether the Worth County Department of Family & Children Services ("DFACS") presented clear and convincing evidence that the continued deprivation of the children would or was likely to cause serious physical, mental, emotional, or moral harm to the children. We hold that such evidence was not presented and therefore reverse.
In October 1993 when J.W. and J.M. were three and five years old respectively, DFACS removed the children from the care of Theresa on the grounds that she was not providing primary care and supervision, that there was alcohol use and domestic violence in the home, and that she frequently left the children in the care of others with her whereabouts unknown. Over the next seven years DFACS created ten reunification plans, requiring Theresa to maintain her mental health, to maintain her parent-child bond with the children, to maintain a safe and sanitary home, to remain alcohol and drug free, and to demonstrate appropriate parenting skills. She failed to maintain a safe and sanitary home, failed to display appropriate parenting skills, and twice tested positive for drugs. She generally met the other two plan goals, maintaining fairly regular contact with the children except when incarcerated (once incarcerated for a period of nine months) and meeting her mental health needs.
Evidence showed that during a 76-day period when she was allowed temporary physical custody of J.M., she (1) permitted him without excuse to miss nine days of school (he had missed only one day before this), (2) was twice incarcerated for a total of eleven days, and (3) was confined for five days to a psychiatric ward for manic depression. Over the years she maintained irregular contact with DFACS, exhibited irrational behavior, threatened caseworkers, and was arrested or convicted at various times for distributing obscene material, for stalking, for prostitution, for criminal trespass, and for obstructing an officer. In October 2000 the juvenile court held a hearing to consider a petition to terminate her rights, which petition was granted. She appeals, arguing the evidence was insufficient.
On appeal of an order terminating parental rights, we consider whether under the evidence, as viewed in the light most favorable to DFACS, any rational trier of fact could have found by clear and convincing evidence that the statutory criteria for terminating parental rights were proven.[1] Those statutory criteria are two-fold: whether there is evidence of parental misconduct or inability and whether termination is in the best interests of the children.[2] Parental misconduct or inability is shown only through evidence that (i) the children are deprived, (ii) such deprivation is caused by the lack of proper parental care or control, (iii) the deprivation is likely to continue, and (iv) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children.[3]
1. Deprivation. That the children are deprived was a finding of the juvenile court in an unappealed deprivation order of January 2000. The juvenile court judicially noticed its prior orders at the hearing and in its termination order of December 6, 2000. The determination of deprivation is binding on Theresa and satisfies the first factor.[4]
2. Lack of Parental Care or Control. In determining lack of parental care or control, a court shall consider, among other things, (i) a medically verifiable deficiency of the parent's mental or emotional health that renders the parent unable to provide adequately for *535 the child, (ii) chronic unrehabilitated abuse of controlled substances that renders the parent incapable of providing adequately for the child, and (iii) felony convictions resulting in imprisonment that has a demonstrable negative effect on the quality of the parent-child relationship.[5] These considerations are of little import here, as DFACS caseworkers conceded that Theresa successfully received treatment for her mental disorder and that they knew of no chronic drug abuse (over the years multiple drug tests were done, with one in 1996 and one in 1998 showing evidence of cocaine). With the exception of a nine-month period of imprisonment from October 1999 to July 2000, Theresa maintained fairly regular contact with the children over the seven years.
As the children were not in Theresa's custody, the court could also consider whether she failed significantly, for a period of one year or longer, to develop and maintain a parental bond with the children in a meaningful, supportive manner or to comply with the reunification plans.[6] No evidence showed the lack of a parental bond other than the nine-month period of no contact while she was incarcerated. Evidence showed that while she complied with some of the reunification plan goals, she failed to meet the goals of providing a safe and sanitary home, of remaining drug free, and of demonstrating appropriate parenting skills.
Other evidence showed that Theresa was unable during a 76-day trial period to keep her son regularly in school and that during that same period she had two incarcerations for a total of eleven days and spent five days away from home in psychiatric treatment. Her constant difficulties with the law, her failure to cooperate and maintain regular contact with DFACS, her irrational behavior, her threats to caseworkers, and the other evidence cited above lead us to the conclusion that a rational trier of fact could have found clear and convincing evidence that she lacked proper parental care and control, resulting in the children's deprivation.
3. Cause of Deprivation Likely to Continue. Theresa's continued behavior as demonstrated over the seven years the children have been in the custody of DFACS supports the juvenile court's conclusion that the cause of the deprivation is likely to continue.[7] Evidence of past conduct is considered in reaching this conclusion.[8]
4. Continued Deprivation Likely to Cause Serious Physical, Mental, Emotional, or Moral Harm to the Children. Herein lies the problem. After cross-examining Theresa, DFACS put on only two former caseworkers and some exhibits to establish its case. None of these witnesses testified to any potential or actual serious physical, mental, emotional, or moral harm to the children. None testified that the children were thriving in foster care, that the children had been or would be seriously affected by Theresa's continuing to have a parental relationship with the children, or that the children were experiencing any harm caused by "foster care drift." There are some indirect references to good foster care in the case plans, but these plans were submitted to show the case plan goals, not to show psychological harm or benefits to the children. This is hardly clear and convincing evidence. The juvenile court's conclusory statements that DFACS had met its burden on this issue were unsupported by any findings.
In the Interest of K.J.[9] involved similar facts. There the father's repeated incarcerations supported findings that the father's lack of parental care or control caused the child to be deprived and that this deprivation was likely to continue.[10] The termination order also contained a summary statement that the continued deprivation would likely *536 cause serious physical, mental, emotional, or moral harm to the child.[11] Nevertheless, we reversed, holding that "an order terminating parental rights must contain explicit findings supporting the conclusions that by reason of the deprivation the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm."[12] We explained that a "dry recitation that certain legal requirements have been met is insufficient to satisfy the requirements of the law. The trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached."[13] Since the trial judge in K.J. did not set forth any facts supporting this conclusion, we determined that this was reason enough to reverse.[14] Similarly, here the juvenile court failed to set forth facts supporting its conclusion.
Moreover, as in K.J., our own review of the record fails to yield any evidence on this issue.[15] Like K.J., neither caseworker testified that the children were likely to suffer serious harm if parental rights were not terminated. No one testified that the children's relationship with Theresa was harmful to the children. There was no expert testimony regarding the effect on the children if parental rights were not terminated. Similar to K.J., the lack of evidence and findings on this matter precludes us from concluding that the evidence authorized the juvenile court to find by clear and convincing evidence that the children were likely to suffer serious physical, mental, moral, or emotional harm; thus, we are constrained to reverse.[16]
Judgment reversed.
ANDREWS, P.J., and ELDRIDGE, J., concur.
NOTES
[1] In the Interest of E.C., 225 Ga.App. 12, 13, 482 S.E.2d 522 (1997); see OCGA § 15-11-99.
[2] OCGA § 15-11-94(a); see E.C., supra, 225 Ga. App. at 14, 482 S.E.2d 522.
[3] OCGA § 15-11-94(b)(4)(A)(i)-(iv); E.C., supra, 225 Ga.App. at 14, 482 S.E.2d 522.
[4] In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001); E.C., supra, 225 Ga.App. at 14-15, 482 S.E.2d 522.
[5] OCGA § 15-11-94(b)(4)(B)(i)-(iii).
[6] OCGA § 15-11-94(b)(4)(C)(i), (iii).
[7] In the Interest of A.M.L., 242 Ga.App. 121, 123 124(1)(c), 527 S.E.2d 614 (2000) (mother's conduct over seven years may be a good predictor of her future conduct).
[8] In the Interest of L.S.D., 243 Ga.App. 626, 627, 534 S.E.2d 109 (2000); E.C., supra, 225 Ga.App. at 16, 482 S.E.2d 522.
[9] 226 Ga.App. 303, 486 S.E.2d 899 (1997).
[10] Id. at 306-307(2)(a), 486 S.E.2d 899.
[11] Id. at 307(2)(b), 486 S.E.2d 899.
[12] (Citation and punctuation omitted.) Id.
[13] (Citations and punctuation omitted.) Id.
[14] Id. at 307-308(2)(b), 486 S.E.2d 899.
[15] See id. at 308(2)(b), 486 S.E.2d 899.
[16] Id. at 309(2)(b), 486 S.E.2d 899.