A01A1335. IN THE INTEREST OF D. F. et al., children.
(555 SE2d 225)

MIKELL, Judge.

The mother appeals the juvenile court's termination of her parental rights to her children D. F., I. F., and A. F. We reverse because the record does not contain clear and convincing evidence supporting the juvenile court's finding that the continued deprivation of the children would likely cause them serious harm.

The standard of appellate review is whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost."[1] "This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met."[2] However, in reviewing the record of a proceeding for the termination of parental rights, we are mindful that "there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. Accordingly, compelling facts are required to terminate parental rights."[3]

OCGA § 15-11-94 establishes a two-step process in considering the termination of parental rights. The court is first required to determine whether there is clear and convincing evidence of parental misconduct or inability. If there is parental misconduct or inability, the court considers whether termination of parental rights is in the

---

[1] (Citation and punctuation omitted.) *Sims v. Sims,* 171 Ga. App. 99, 100 (318 SE2d 805) (1984).

[2] (Citation and punctuation omitted.) *In the Interest of S. J. C.,* 234 Ga. App. 491-492 (507 SE2d 226) (1998).

[3] (Citation and punctuation omitted.) *In the Interest of K. J.,* 226 Ga. App. 303, 306 (1) (486 SE2d 899) (1997).

best interest of the child.[4] Parental misconduct or inability must be shown by clear and convincing evidence that (1) the child is deprived, (2) the lack of parental care or control is the cause of the deprivation, (3) such lack of care or control is likely to continue, and (4) the continued deprivation "will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."[5]

The record shows that the Carroll County Department of Family & Children Services (the "Department") became involved with the mother and her three children in 1996. The mother was then 16 years old, and she required the Department's assistance in caring for her children. In 1997, the mother damaged her boyfriend's car, for which she was convicted of criminal trespass and placed on probation. In May and June 1998, the mother was jailed for violation of probation because she failed to perform community service. No one in the mother's family was willing to take her children when she was incarcerated, and so the Department assumed emergency custody. After a hearing, the juvenile court found in an unappealed order that the children were deprived and awarded temporary custody to the Department. The children have been placed in foster care. A caseworker testified that, before the mother was jailed, her parenting skills were not so poor that the Department would have been justified in removing the children from her custody.

After the mother was released from jail, she agreed with the Department on a plan for her permanent reunification with the children. Under the plan, the mother's strengths were noted as "[she] loves her children; no domestic violence; no substance abuse." Needs were listed as "child needs met; develop relationship with children; maintain emotional stability; maintain stable housing; maintain employment." The mother's plan goals included developing and maintaining an appropriate relationship with her children, maintaining emotional stability, maintaining stable housing, and maintaining employment. The mother was also required to cooperate with the child support enforcement division.

The mother never successfully completed her case plan, although the evidence shows at least some level of cooperation and effort in each area. The mother visited her children more than 60 times, which was more than 98 percent of the scheduled visitations. The mother attended ten sessions with a psychological counselor, as the Department recommended. The Department asked the mother to attend joint counseling with the children's father, and she appeared for the counseling session, although he did not. And although the

---

[4] *In the Interest of C. D. A.*, 238 Ga. App. 400, 401 (519 SE2d 31) (1999).
[5] OCGA § 15-11-94 (b) (4) (A).

Department maintains the mother is deficient in her parenting skills, she did complete a required course in parenting.

The mother's satisfaction of her employment, housing, and child support goals was more problematic. She abandoned her apartment in October 1999 and moved in with her grandmother, who has never agreed to take in the mother's children. The mother also had difficulty securing permanent employment. She was employed at a fast food restaurant from August 1998 through May 1999, when she was fired. She started another job in June 1999 and was laid off after six weeks. She had a seasonal job at Honey Baked Ham around Thanksgiving of 1999. At the time of the hearing in May 2000, the mother was eight months pregnant and unemployed. The mother was unable to maintain her child support payments. However, she attended school as a part of an agreement with the child support enforcement division.

In September 1999, the mother had an altercation with the children's father (who did not live with the mother at the time and is currently incarcerated) and was jailed for a day. It was after this incident that the Department sought to terminate the mother's parental rights. The caseworker testified that she filed the petition because there had been no change in the mother's situation since 1996, and because she failed to make further progress on her case plan.

The mother claims on appeal that the evidence was insufficient to support the juvenile court's decision to terminate her parental rights. Clear and convincing evidence does support the juvenile court's findings that (1) the children were deprived, (2) the deprivation was caused by lack of parental care and control, and (3) the deprivation was likely to continue. The mother was in jail and her children had no place to stay when they were placed in temporary state custody. The mother did not complete her case plan for the return of the children. Despite her undeniable efforts to maintain close contact with her children, the mother has been unable to provide stable housing, maintain long-term employment, or honor her child support obligations. She is no longer making progress on her case plan. The mother is living in her grandmother's home, and there is no competent evidence that her grandmother would be willing to provide shelter for the mother's children as well. By the time of the termination hearing, the mother was again pregnant and she was not working.

Nevertheless, clear and convincing evidence does not support a finding that the children were likely to suffer serious harm if their deprivation were to continue. With respect to this requirement, the juvenile court made the following findings:

> Such actions are likely to cause serious harm to the children. The mother although having a concern for the children

does not have the parenting skills and ability to keep them safe from harm and properly care for such children. The children are in a stable environment at the present time as to [sic] which the mother could not supply both from an emotional and physical perspective. Concern for your children regardless of how great that is cannot provide the ability to properly care for them. The mother would make, perhaps, a good baby sitter to care for the children on an occasional basis but not as an ongoing parenting figure and influence.

These findings fail to support the juvenile court's conclusion that the children were likely to suffer serious harm if their deprivation were to continue. The mother's inability to care for her children does not necessarily mean that her current relationship with them is detrimental. We find no expert testimony with regard to the effect on the children if the mother's parental rights were not terminated; there is no testimony that the children's relationship with their mother was harmful; and there is no testimony that the children are currently suffering due to their placement in foster care or that without a permanent placement that they would suffer serious harm.[6] We note that the Department presented no identifiable prospects for adoption, and the current foster parents do not want to adopt the children. It appears to us that the Department wishes to terminate the children's existing relationship with their mother, which they cannot show is likely to cause serious harm, in return for the possibility that the children will be placed in an as yet unidentified permanent home.

The Department did not present evidence which would satisfy the statutory requirements for termination. We are mindful that the mother exhibits poor parenting skills and interacts with her children more like an older sibling than a mother, and that she has experienced a sometimes violent relationship with the children's father, but there is nothing in the record that shows that continuing the legal relationship of parent and child is inherently harmful to the children. It follows that the juvenile court's order terminating the mother's parental rights must be reversed.

In view of our decision, the mother's arguments with regard to the Department's introduction of evidence beyond the scope of the proceedings are moot.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

---

[6] *In the Interest of J. M.*, 251 Ga. App. 380, 383-384 (554 SE2d 533) (2001); *In the Interest of K. J.*, supra, 226 Ga. App. at 307 (2).

DECIDED OCTOBER 11, 2001.

*Robert A. Kunz*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, P. Brian Campbell, Assistant Attorneys General*, for appellee.