A02A0360. IN THE INTEREST OF K. S. K., a child.
(557 SE2d 494)

PHIPPS, Judge.

K. S. K.'s mother, S. K., appeals the termination of her parental rights. She challenges the termination order on grounds of evidentiary insufficiency, and she contends that the trial court erred in denying her subsequent motion to modify the termination order based on a change in circumstances. Finding the evidence sufficient and finding no error in denial of the motion to modify, we affirm.

S. K. is the mother of three sons: K. S. K. (born in 1999), B. M. (born in 1996), and C. E. (born in 1991). She came to the attention of the Haralson County Department of Family & Children Services (DFACS) in January 1999, because she was suspected of neglecting or abusing B. M. and lacked stable housing. After B. M. was removed from her custody, she attempted suicide by shooting herself. At the time, she was seven months pregnant with K. S. K. and badly addicted to crack cocaine. After the suicide attempt, she was jailed

---

for felony forgery. She gave birth to K. S. K. on March 21, 1999, while she was still jailed. He was taken away from her immediately and later placed in "foster to adopt" care. S. K. was paroled from jail in November 1999 but reincarcerated in February 2000 because she failed a drug screen. She remained in the Haralson County jail until July 2000, when she was sent to Metro State Prison. The termination hearing was held in February 2001.

S. K. visited K. S. K. only once, while she was on parole. At the time, she was required to submit to a drug screen and tested positive for cocaine. She did not write to or attempt to communicate with K. S. K. or comply with other features of her reunification case plan, and the citizens review panel recommended that her parental rights be terminated. At the termination hearing, S. K. testified that after being sent to state prison, she "got saved" through religion, individual counseling, substance abuse classes, and part-time work cleaning floors on the prison sanitation crew. At the time of the hearing, however, S. K. had completed no drug treatment programs, had no firm parole date, and was not scheduled to be released from prison until January 2002. The DFACS worker assigned to the case testified that K. S. K. was thriving in foster care and that his foster parents wanted to adopt him.

On July 9, 2001, the Haralson Juvenile Court entered an order terminating S. K.'s parental rights. On August 1, S. K. moved for modification or vacation of the termination order based on a change in circumstances arising from her parole on July 19. In the motion, S. K. stated that she had begun living with her mother and was seeking employment. The motion was heard on August 21. At the hearing, the psychiatrist treating S. K. at the county mental health center testified that she had seen S. K. only once since her release from prison and conceded that she remained at high risk for relapse. The juvenile court denied the motion for modification or vacation.

Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." [Cit.] Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. [Cit.] . . . In the second prong of the termination test, the juvenile court must consider whether ter-

mination of parental rights would be in the best interest of the child.[1]

[O]n appeal from a juvenile court's order terminating parental rights, we review the evidence in the light most favorable to the state[;] we still must determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should have been terminated. We do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[2]

S. K. contends that the court erred in finding that DFACS had met its burden of establishing by clear and convincing evidence that the deprivation of K. S. K. was likely to continue, that the continued deprivation would cause serious harm to him, and that termination of S. K.'s parental rights was in the child's best interest. We cannot agree. DFACS has shown that S. K.'s inability to parent K. S. K. was due at least in part to her crack cocaine addiction and near continuous incarceration since his birth. Although S. K. had been released from prison, her job prospects and ability to stay sober and to parent. K. S. K. remained highly uncertain. Moreover, she had shown no interest in the child outside of her expression of interest while testifying in this proceeding. K. S. K. had flourished in the care of foster parents who want to adopt him. The evidence, viewed in a light most favorable to DFACS, supported the court's findings under the applicable standard,[3] and S. K.'s release on parole did not mandate a contrary decision.

Contrary to arguments advanced by S. K., the trial court did not commit legal error by not making wholly discrete determinations as to the likelihood of continuation of the cause of K. S. K.'s deprivation and whether termination of S. K.'s parental rights would be in his best interest. "[T]he same factors which show parental inability may

---

[1] *In the Interest of V. S.*, 230 Ga. App. 26, 27 (495 SE2d 142) (1997).

[2] (Footnotes omitted.) *In the Interest of B. N. A.*, 248 Ga. App. 406, 407 (1) (546 SE2d 819) (2001).

[3] Compare *In the Interest of J. M.*, 251 Ga. App. 380, 383 (4) (554 SE2d 533) (2001) (evidence insufficient to support finding that continued deprivation of the children would cause serious harm to them; no one testified that children were thriving in foster care or would be seriously affected by the mother continuing to have a relationship with them); *In the Interest of D. F.*, 251 Ga. App. 859 (555 SE2d 225) (2001) (evidence insufficient to support finding of serious harm to children as a result of continued deprivation; DFACS presented no identifiable prospects for adoption of the children).

also show that termination would be in the children's best interests. [Cit.]"[4]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 14, 2001.

*Murphy, Murphy & Garner, Stephen E. Garner,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Assistant Attorney General, Ana M. Rountree, Thomas M. Witcher,* for appellee.

---

[4] *In the Interest of R. N.,* 224 Ga. App. 202, 205 (2) (480 SE2d 243) (1997).