635 S.E.2d 223 (2006)
In the Interest of M.A. et al., children.
No. A06A1271.
Court of Appeals of Georgia.
July 31, 2006.
Jason W. Swindle, Drummond & Swindle, Atlanta, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, T. Michael Flinn, for appellee.
*224 RUFFIN, Chief Judge.
The juvenile court terminated the natural mother's parental rights to her three children, M.A., T.A., and D.A. On appeal, the mother contends that the trial court erred in finding that: (1) there is clear and convincing evidence of present parental misconduct or inability; (2) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children; and (3) termination of parental rights is in the children's best interests. As the State failed to present clear and convincing evidence of the mother's present misconduct or inability, we reverse.
When reviewing an order terminating parental rights, we view the evidence in a light most favorable to the juvenile court's ruling and determine whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated."[1]
Viewed in this manner, the evidence shows that the Carroll County Department of Family and Children Services (hereinafter "DFCS") became involved with the family of M.A., T.A., and D.A. in June 2001 because their home at the time lacked running water, was unsafe and unsanitary, and the children were dirty. In January 2002, the children's father poured kerosene throughout the house and threatened to burn the house and everyone inside. Four months later he severely battered the children's mother and was arrested and incarcerated. On August 23, 2002, M.A., T.A., and D.A. were taken into protective custody by DFCS after a caseworker found the children living alone with their father. On the same day, the juvenile court entered an order finding probable cause of deprivation. DFCS filed a deprivation petition on August 27, 2002 and, after a hearing, the court granted DFCS temporary custody. The juvenile court subsequently entered an order of adjudication and disposition, finding that the children were deprived. Both parents stipulated to deprivation. On November 13, 2002, DFCS prepared a case plan for reunification that was subsequently adopted by order of the juvenile court. In addition to obtaining and maintaining stable income and housing, the plan required the parents to attend parenting classes, complete psychological evaluations and follow the recommendations proceeding therefrom, obtain counseling for domestic violence, and use "non-emotionally abusive" methods of interacting with children during visitation. The mother visited the children every week with few exceptions,[2] and, as required by the case plan, obtained a psychological evaluation, completed parenting classes, and obtained employment. The mother was not able to obtain domestic violence counseling as there was none offered in Carroll County. During a hearing in January 2004, the juvenile court judge expressed that the mother had "made some real efforts." After evidence was presented that the mother had "made significant progress on her case plan goals," the court determined that the mother was ready for a trial placement of one of her children, M.A. Two weeks into the trial placement, however, M.A. was again taken into custody by DFCS when the mother left M.A. in the care of an individual whom DFCS had not approved in advance. There was no showing that the caregiver had a criminal record or in any way presented a danger to the child.
Although the mother occasionally fell behind on rent and at one time had her utilities disconnected when she failed to pay her bills, she has maintained the same residence for the past two years. She has also been successful in obtaining employment through a temporary agency. As soon as one job would expire, she would obtain another one. At the time of the termination hearing, the mother was employed and was still in the same home. In mid-2004, the mother's boyfriend moved into the home with his two children. Shortly thereafter, the juvenile court began the process of returning all three children to the mother with a trial placement of the *225 youngest, D.A. Before authorizing the placement, however, the court required a criminal background check on her boyfriend. When the check revealed a misdemeanor conviction for simple battery in 1998, the trial placement was suspended. While a caseworker told the mother that separating from her boyfriend would facilitate the return of her children, this was not incorporated into the case plan or a court order. The juvenile court subsequently granted DFCS' motion for nonreunification and, following a hearing, terminated the mother's parental rights.[3]
We proceed in a termination case with the knowledge that "there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously."[4] "[T]he right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances."[5]
In determining whether to take this drastic step, the juvenile court must find by clear and convincing evidence both that there is parental misconduct or inability and that termination is in the best interest of the child.[6] The first requirement is satisfied when the juvenile court finds that "(1) the child is deprived, (2) the lack of parental care or control is the cause of the deprivation, (3) such lack of care or control is likely to continue, and (4) the continued deprivation `will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.'"[7]
1. The mother first contends that the State did not prove that the cause of the children's deprivation was likely to continue. "Evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required."[8] Here, the primary cause of the past deprivation, the father, is no longer in contact with the mother and children.[9] And the evidence shows that the mother has substantially complied with her court-appointed case plan. The mother has seldom missed a scheduled visit with her children. She has maintained a relationship with the children she is able to visit. She underwent a psychological evaluation and completed the parenting classes as required by the plan. The State presented no clear and convincing evidence that the mother was uncooperative with DFCS or apathetic as to the welfare of her children.
At the termination hearing, one of the caseworkers for the family testified that his only concerns regarding the mother's compliance with the case plan were stable housing and employment. The mother has been living in the same home for over two years and has been employed throughout that time. Although the mother has worked for several businesses, she has been consistently employed by the same temporary agency. And while the mother has not always been current on her payments for rent and utilities, she has continued to make progress with her plan and has never fallen so far behind that she cannot recover financially. After two years she is only $150 in arrears. Thus, the mother has corrected the initial cause of deprivation and complied with her case plan.[10]
In ruling to terminate the mother's parental rights, it appears that the juvenile court relied, in part, on the evidence that the mother is currently living with her boyfriend and his two children in the same three-bedroom, *226 one-bathroom home. Although a caseworker suggested to the mother that the boyfriend's presence in the home might affect her parental rights, the case plan never specified that the mother must live apart from him in order to have her children returned to her.[11] Moreover, the mother indicated that she was willing to have the boyfriend leave if necessary. Because our review of the record indicates that the State failed to prove by clear and convincing evidence that the mother is presently unfit, we reverse the order terminating her parental rights.[12]
2. Because of our holding in Division 1, we need not address the mother's remaining enumerations of error.
Judgment reversed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] (Punctuation omitted.) In the Interest of D.B.P., 262 Ga.App. 1, 1, 584 S.E.2d 256 (2003).
[2] One of the children, T.A., was placed in Augusta, and the mother was not able to visit her thereafter. DFCS provided the mother with a number to reach T.A.'s caregiver. The mother called this number and left messages, but never had her calls returned. DFCS did nothing further to facilitate visitation between mother and daughter.
[3] Several attempts to place the children with a fit and willing relative failed.
[4] (Punctuation omitted.) In the Interest of D.F., 251 Ga.App. 859, 859, 555 S.E.2d 225 (2001).
[5] In the Interest of J.C., 242 Ga. 737, 738(1), 251 S.E.2d 299 (1978).
[6] In the Interest of D.F., 251 Ga.App. at 859-860, 555 S.E.2d 225.
[7] Id. at 860, 555 S.E.2d 225.
[8] (Punctuation omitted; emphasis in original.) In the Interest of J.H., 267 Ga.App. 541, 545, 600 S.E.2d 650 (2004).
[9] See id.
[10] See In the Interest of A.A., 252 Ga.App. 167, 172(c), 555 S.E.2d 827 (2001).
[11] See In the Interest of J.H., 267 Ga.App. at 545, 600 S.E.2d 650 (suggestion that children would be harmed by fact that mother was living with fiancé not sufficient to show serious harm requirement of termination proceeding); see also In the Interest of V.S., 249 Ga.App. 502, 506(1)(b), 548 S.E.2d 490 (2001) (fact that father lived with five other men not sufficient to establish parental unfitness when this factor had not been implemented into case plan and father had not been afforded adequate opportunity to meet criteria set out in plan).
[12] See In the Interest of L.J.L., 247 Ga.App. 477, 481, 543 S.E.2d 818 (2001).