**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 6, 2014**

# In the Court of Appeals of Georgia

A14A1462. IN THE INTEREST OF C. K. S., a child.

MCFADDEN, Judge.

The father of C. K. S. appeals the termination of his parental rights. He argues that the evidence does not support the termination. He also challenges the juvenile court's decision not to place the child with a family member. We agree that the evidence is insufficient to support the termination, and we therefore reverse. We do not reach the issue regarding the child's placement.

On appeal of a juvenile court's order terminating a parent's rights, we view the evidence

> in the light most favorable to the juvenile court's ruling, and [our] review is limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. In this review, [we] must

necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations.

*In the Interest of D. T. A.*, 312 Ga. App. 26, 27 (717 SE2d 536) (2011) (citations and punctuation omitted).

Viewed in this light, the evidence shows that on July 7, 2011, two days after the child was born, the Department of Family and Children Services ("DFCS") filed a deprivation petition seeking custody of the child because the mother was incarcerated. The juvenile court granted the petition. After conducting a hearing, four days later, the court continued custody of the child in DFCS. The child's case manager filed an affidavit in which she testified that she had contacted the father and paternal grandmother, but they reported that they did not have the resources to care for the child.

On July 28, 2011, the court found the child to be deprived because the mother was incarcerated; her parental rights to another child had been terminated because of her chronic, unrehabilitated substance abuse, lack of stable housing and income, and failure to develop a bond with the child; the father admitted marijuana use; the father was unemployed; and the father resided in his mother's house, which did not have

2

accommodations for an infant. Although he had been notified of the hearing, the father was not present.

On August 29, 2011, the court entered a case plan with the alternate goals of the reunification of the child with his mother and the adoption of the child. The case plan listed multiple goals for the mother to meet in order for her to regain custody. It listed no specific goals for the father. The mother signed the plan, but the father did not.

According to DFCS, when it looked as if the mother would not meet the goals of her case plan, DFCS intensified its efforts to work with the father. Nonetheless, the record contains no case plan entered before June 2012 specifically directing the father to meet any goals to regain custody of the child. In early 2012, the father voluntarily entered two accountability-court programs: the Savannah-Chatham County Felony Drug Court, a program of the Chatham Superior Court, and the Family Dependency Treatment Court, a program of the juvenile court. On February 7, 2012, he filed a petition to legitimate the child. The petition was granted in April 2012.

In the meantime, on March 15, 2012, the father pled guilty to theft by shoplifting and was sentenced to five years probation. In May 2012, the father tested positive for the presence of cocaine. Previously, before he had become part of the

child's case plan, the father pled guilty to possession of more than an ounce of marijuana, possession of a tool for the commission of a crime, and misdemeanor theft by receiving, and was sentenced under the first offender act to four years probation.

On June 1, 2012, DFCS filed a motion seeking to extend its custody of the child. DFCS alleged that the father had not complied with the recommendations of a psychological evaluation and had not completed parenting instruction. But not until June 19, 2012, did the juvenile court enter a case plan that included goals for the father. Among other things, the goals in that plan required the father to complete a parenting class; to complete a drug and alcohol treatment program; to remain drug and alcohol free for six months; to submit to random drug screens; to undergo a psychological evaluation and to follow the recommendations of the psychologist; to maintain a source of income to support the child; to maintain stable, clean, and safe housing suitable for the child; to obtain childcare services; and to attend all visitations and the child's doctor's appointments.

On September 28, 2012, DFCS filed a petition to terminate the parents' rights. It alleged that the father had failed to remain drug and alcohol free; had failed to maintain stable housing sufficient for himself and the child; had failed to maintain stable income sufficient to support himself and the child; had failed to complete a

4

substance abuse treatment program; had failed to support the child; and had failed to maintain a bond with the child. DFCS also alleged that the father had been convicted of and incarcerated for an unspecified felony which had adversely affected the parent-child relationship. Hearings on the petition were scheduled for December 3, 2012, February 4, 2013, and April 8, 2013, but were continued at the request of DFCS due to the father's or the father's and mother's progress toward meeting their goals.

In January 2013, the father missed a urine test. This was considered to be a positive test. In April 2013, the Family Dependency Treatment Court sanctioned the father because during a "Community Policing K-9 search" of his mother's residence where he was living, officers found empty liquor bottles, a marijuana roach and marijuana residue in the trash can outside the back door of the residence. They found a prescription bottle containing his mother's hydrocodone in the father's bedroom closet. The juvenile court ordered the father to move out of his mother's residence.

On June 10, 2013 and June 15, 2013, the father tested positive for the presence of alcohol in violation of the terms of the Family Dependency Treatment Court and his substance abuse treatment program. The father admitted that he had been drinking a month and a half. His alcohol use also amounted to a violation of his superior court probation. He was sentenced to serve 20 days in the Chatham County Detention

Center for contempt of the Family Dependency Treatment Court. He was sentenced to complete a 28-day substance abuse program for the superior court violation and he was ordered to complete a six-month residential treatment program following his incarceration. The child would not be allowed to stay with him at the program. The father remained incarcerated at the time of the August 12, 2013 termination hearing.

On October 14, 2013, the court terminated the parental rights of both parents. The parents filed motions for new trial, which the court denied. We granted the father's application for discretionary appeal, and this appeal followed.

1. *The sufficiency of the evidence.*

First we observe that in 2013, the General Assembly adopted a new Juvenile Code to replace Chapter 11 of Title 15 of the Georgia Code. Ga. L. 2013, p. 294, § 1-1. The new Juvenile Code became effective on January 1, 2014, and does not apply to this case but to all juvenile proceedings commenced on and after January 1, 2014. Ga. L. 2013, p. 294, § 5-1.

The father argues that clear and convicting evidence does not support the termination because it does not show parental misconduct or inability. Specifically, he challenges the juvenile court's findings that the child was deprived; that any

6

deprivation was likely to continue; and that the child would suffer serious physical, mental or emotional harm if the termination petition were not granted.

A juvenile court must employ a two-prong test in order to terminate a parent's rights:

> In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. Former OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. Former OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child, after considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. Former OCGA § 15-11-94 (a).

*In the Interest of D. P.*, 326 Ga. App. 101, 102 (756 SE2d 207) (2014) (citation, punctuation, and footnotes omitted).

(a) *Finding that the child was deprived and that deprivation is likely to continue.*

"Without belaboring the point here, we will assume that the evidence was sufficient to show that the [child was] deprived and that the mother and . . . father were responsible for that deprivation at the time the [child was] placed in the custody of DFCS [and at the time of termination hearing]." *In the Interest of C. S.*, 319 Ga. App. 138, 145 (1) (735 SE2d 140) (2012).

We observe that the father did not appeal the order finding deprivation, so the father is bound "to the finding that *at the time of the order* the child was deprived for the reasons given in the order." *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1), n. 6 (645 SE2d 363) (2007) (emphasis in original). Those reasons included that, at that time, the father admitted marijuana use, the father was unemployed, and the father resided in his mother's house, which did not have accommodations for an infant. And at the time of the termination hearing, the father was incarcerated and would be unable to have custody of the child for at least six months, while he was in the residential treatment facility. See *In the Interest of J. A. W.*, 281 Ga. App. 545, 547 (636 SE2d 725) (2006).

We also will assume that the evidence was sufficient to show that the deprivation was likely to continue, see *In the Interest of C. S.*, 319 Ga. App. at 145 (1), given the evidence that the father admitted using marijuana at the time of the

deprivation hearing in July 2011; that he tested positive for the presence of cocaine in May 2012, the month after his legitimation petition was granted; that he missed a urine test in January 2013, which was considered to be a positive test; and that in June 2013, he tested positive twice for the presence of alcohol and admitted that he had been drinking for a month and a half.

(b) *Finding that continued deprivation would harm the child and that the best interest of the child would be served by termination.*

The father argues that the juvenile court erred by finding by clear and convincing evidence that the child was suffering harm or would probably suffer serious physical, mental or emotional harm if the petition to terminate parental rights were denied. We construe this to be a challenge to the juvenile court's finding regarding the first prong of the two-prong analysis that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child, former OCGA § 15-11-94 (b) (4) (A), and to the juvenile court's finding regarding the second prong of the analysis that termination was in the child's best interest. Former OCGA § 15-11-94 (a).

(i) *Finding that continued deprivation was likely to cause harm.*

9

The juvenile court concluded that continued deprivation was likely to cause harm because of evidence of the detrimental effects of ongoing temporary foster care to the child, the on again-off again relationship of the father with the child, and that as of the date of the termination hearing, the father was not close to being in a position to parent the child. Pertinent to this conclusion were certain factual findings that are not supported by the record. For example, the juvenile court found that the father repeatedly had been incarcerated because of his substance abuse. It found specifically that the father had been incarcerated four times since the case was initiated. But the only record evidence of the father's incarceration during the period at issue is of the accountability-court contempt sanctions of 48 days for his June 2013 use of alcohol. Although the juvenile court found that the father had been incarcerated for violation of his probation due to the May 2012 positive cocaine test, record evidence does not support this finding. There are some indirect references to the father's incarceration in the June 2012 case plan, but this plan was submitted to show the father's case plan goals, not as evidence of the father's incarceration. "This is hardly clear and convincing evidence." *In the Interest of J. M.*, 251 Ga. App. 380, 383 (4) (554 SE2d 533) (2001).

Significantly, the record refutes the juvenile court's finding that the father had not established or maintained a bond with the child. The DFCS case manager testified that the child has a bond with the father, that the father has a bond with the child, and that the father has visited the child throughout the case. She testified that this was the reason that DFCS intensified its efforts to work with the father. The father testified that he visited the child and that he loved him.

And it is not apparent that the juvenile court considered the evidence that the father had secured employment, would have obtained housing had he not been incarcerated for consuming alcohol, and had completed the case plan goals of completing parenting classes and obtaining a psychological assessment.

The DFCS case manager testified that she felt that the child would be in danger if placed with the father because "if he continue[d] with the instability he ha[d] shown, there would be no one to care for the child if he were to end up incarcerated again, at some point, and also the concern of substance abuse." She also testified that it is in a child's best interest to be in a permanent home because children need stability. But none of the witnesses

> testified that the child was likely to suffer serious harm if parental rights were not terminated. None of the witnesses testified that the child's

11

relationship with the father was harmful to the child. . . . There was no expert testimony regarding the effect on the child of his father's incarceration or the likely effects if parental rights were not terminated.

*In the Interest of K. J.*, 226 Ga. App. 303, 308 (2) (b) (486 SE2d 899) (1997) (citations omitted). Consequently, "we cannot say that the evidence authorized the [juvenile] court to find by clear and convincing evidence that the child was likely to suffer serious physical, mental, moral or emotional harm." Id. at 309 (2) (b).

(ii) *Finding that termination was in the child's best interest.*

The juvenile court concluded that termination was in the child's best interest because the child is in a placement with someone who is willing to adopt the child and who, unlike the parents, had bonded with the child. But, as noted, the evidence does not support the finding that the father had not bonded with the child. "As a result, the juvenile court was not authorized to terminate the [father's] parental rights on this basis." *In the Interest of D. P.*, 326 Ga. App. 101, 109-110 (756 SE2d 207) (2014) (citations omitted).

"While we are reluctant to reverse the juvenile court's determination, no judicial determination is more drastic than the permanent severing of the parent-child relationship." *In the Interest of D. L. T. C.*, 299 Ga. App. 765, 771 (684 SE2d 29)

12

(2009) (citations and punctuation omitted). "And the right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances." *In the Interest of M. A.*, 280 Ga. App. 854, 856 (635 SE2d 223) (2006) (citation omitted). Absent clear and convincing evidence that the child's continued deprivation will harm the child and that termination is in the child's best interest, we are compelled to "reverse the judgment and remand the case for the establishment of [a] reunification plan[] for [the father], subject to whatever disposition is warranted by future events and those occurring since the last termination hearing." *In the Interest of D. L. T. C.*, 299 Ga. App. at 771.

2. *Alternative placement.*

The father argues that the juvenile court's finding that there was no suitable relative with whom to place the child was premature, given that a paternal aunt had been evaluated, that "everything appeared appropriate," according to the DFCS case manager, and that DFCS was simply awaiting final, written confirmation before approving that placement. . We do not reach this enumeration, given "our reversal of the termination of the [father's] parental rights, [but] it would seem appropriate for the juvenile court to now reconsider its finding [regarding the availability of a relative

13

as] a suitable placement[]." *In the Interest of C. S.*, 319 Ga. App. at 149 (2) (footnote omitted).

*Judgment reversed. Andrews, P. J., concurs; Ray, J., concurs in the judgment only with special concurrence.*

A14A1462. IN THE INTEREST OF C. K. S., a child.

RAY, Judge, concurring specially.

Because I don't necessarily agree with all that is written in the majority's opinion, I concur in judgment only and agree that the decision of the Juvenile Court of Chatham County must be reversed as to the father of the subject child. I reach this conclusion, in principal part, because I believe that the trial court's decision as to the father was improperly influenced by the abundance of evidence against the mother of the child. Though she did not appeal, clearly there was ample evidence in the record to support the trial court's decision to terminate the mother's parental rights. As to the father, as the majority has found, there is considerable doubt.

The record clearly shows that the father had made progress toward meeting the goals set for his reunification with the child, among them that he filed (successfully) a petition to legitimate his relationship with the child, consistently visited with and bonded with the child, participated in parenting classes, submitted to a psychological

evaluation, and sought out employment. While certainly there was some negative conduct by the father during the rather short period after which he had been added to the case plan, as evidenced by sanctions leveled against him by the treatment courts in which he was participating, it is worth noting that he had not been terminated or "booted out" of the treatment programs by the presiding judges therein. In short, it seems to me that the burden of proof to forever terminate the father's relationship with his child has not been met. Whether he is ultimately successful in obtaining reunification remains a question, and assuming that termination is the proper outcome, that time has not yet come.