A11A1112. IN THE INTEREST OF D. T. A. et al., children.
(717 SE2d 536)

MCFADDEN, Judge.

Mariano and Guadalupe Azua, the paternal grandparents of D. T. A. and K. F. A., petitioned for the termination of the parental rights of the children's mother and father. The juvenile court granted the termination petition, and we granted the mother's petition for discretionary review of that decision. Only the termination of the mother's parental rights is at issue in this appeal. The mother contends that the evidence was insufficient to support the juvenile court's decision. We find that the evidence was sufficient as to three of the four requirements set forth in OCGA § 15-11-94 (b) (4) (A) for finding the parental inability or misconduct necessary to

terminate parental rights, but that as to the fourth requirement the juvenile court failed to enter the requisite findings of fact. Accordingly, we vacate the judgment and remand this case for appropriate findings.

OCGA § 15-11-94 sets forth the procedure for termination of parental rights, which involves two steps. First, the juvenile court must find

> parental misconduct or inability, which [under OCGA § 15-11-94 (b) (4) (A)] requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

(Footnote omitted.) *In the Interest of J. R. N.*, 291 Ga. App. 521, 525 (2) (662 SE2d 300) (2008). The appellate court views the evidence in the light most favorable to the juvenile court's ruling, see *In the Interest of T. J. J.*, 258 Ga. App. 312, 314 (574 SE2d 387) (2002), and its review is

> limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. In this review, the appellate court must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations.

(Citations omitted.) *In the Interest of A. C.*, 285 Ga. 829, 836 (3) (686 SE2d 635) (2009).

Viewed in this manner, the evidence showed that on March 19, 2009, the mother's grandmother (hereinafter, the great-grandmother) left the children and a box of clothing at the Azuas' house. At that time, D. T. A. was two years old and K. F. A. was three months old. Upon learning that the children were at the Azuas' house, the mother physically attacked the great-grandmother, and a warrant was issued for the mother's arrest. In the meantime, the Azuas, who feared that the mother would accuse them of kidnapping the children, contacted the police. Later on March 19, the juvenile court

entered an immediate shelter care order removing the children from the mother's custody and placing them in the Azuas' custody. In support thereof, the court found that the mother was unemployed and without a stable residence, that she had recently been released from jail after being charged with making terroristic threats against the Azuas, that she was currently on probation, that she had allegedly attacked the great-grandmother, and that she was the subject of an arrest warrant.

The Azuas filed a deprivation petition, alleging that the children were deprived because the mother was incarcerated on aggravated battery charges related to the incident with the great-grandmother; that at the time of her arrest the mother had been on bond in connection with charges of making terroristic threats against the Azuas; that the mother was unemployed and had an inconsistent work history; and that the mother could not provide a suitable home for the children. The Azuas stated in the petition that they believed the father would consent to their temporary legal and physical custody of the children.

The juvenile court held a deprivation hearing, and in April 2009 it adjudicated the children deprived "[b]ased upon the allegations of the petition, the recommendations of [a court-appointed] Guardian ad Litem, the consent of the father, the mother's current incarceration, and the evidence presented." The record on appeal does not include a transcript of the deprivation hearing. The mother stated in her notice of appeal that she would file for inclusion in the record "a transcript of evidence and proceedings," and a transcript of the termination hearing was filed for inclusion in the record, but we have determined through inquiry with the juvenile court that, although the deprivation hearing was recorded, see OCGA § 15-11-41 (b), the recording was not transcribed.

In the deprivation order, the juvenile court awarded temporary legal and physical custody to the Azuas, noting that the Department of Family and Children Services had approved the Azuas' home. The court further ordered that the mother satisfy several requirements before a return of custody would be considered. Specifically, the court ordered that the mother obtain and maintain stable, suitable housing of sufficient size for the family; obtain and maintain employment with income sufficient to meet the family's needs; attend a parenting class; complete a drug and alcohol assessment that included six random drug screenings; maintain meaningful contact with the children by visiting them at least once every two weeks; and pay child support. The mother did not appeal the deprivation order.

In June 2009, the mother pled guilty to the terroristic threats charges and was sentenced as a first offender to five years confinement, the majority of which was to be served on probation. The

mother also pled guilty to battery in connection with the incident involving the great-grandmother. The mother was released from jail in June 2009. In December 2009, however, the mother was again incarcerated after being arrested for attempting to run over her boyfriend with a car, for striking her boyfriend with her fists, for DUI, and for underage drinking. She pled guilty to various charges related to that incident, and her probation on the terroristic threats conviction was revoked. She could remain in prison until 2014.

On June 28, 2010, the Azuas petitioned for the mother's parental rights to be terminated. A hearing on the petition was held on November 1, 2010. The only witnesses at that hearing whose testimony pertained to the termination of the mother's parental rights were the Azuas, the great-grandmother, and the children's maternal grandmother (hereinafter, the grandmother). The mother was not present at the hearing, the juvenile court having denied her motion to be produced from prison. See generally *In the Interest of S. R. B.*, 270 Ga. App. 466, 467 (1) (606 SE2d 655) (2004) (juvenile court was authorized to deny parent's request to be produced from prison for termination hearing where parent received notice of hearing and had adequate opportunity to be heard at hearing through counsel).

Evidence was presented at the termination hearing concerning the mother's efforts to comply with the reunification terms set forth by the court in the deprivation order. During the period between her incarcerations (June 2009 to December 2009), the mother visited with the children weekly for 45 minutes per visit. She completed a parenting class and scheduled a drug and alcohol assessment but had not yet attended the assessment or had any random drug screenings. She applied for jobs, but was not able to obtain employment other than some work she performed for the grandmother and great-grandmother, for which she was paid $2,000. She briefly shared an apartment with a boyfriend (the rent for which was paid by the great-grandmother); otherwise, she lived with the grandmother and great-grandmother. From the time of her December 2009 incarceration forward, the mother saw the children only once but telephoned them weekly. She also sent them cards. At no time did the mother make any child support payments to the Azuas or assist them in providing clothes, gifts, or food for the children, aside from some Christmas presents.

Evidence was presented that D. T. A. had a bond with and loved his mother, but that he never asked or cried for her. K. F. A., due to her young age, had "[v]ery little" bond with her mother. Photographs taken during some of the mother's visits with the children depict them smiling and appearing happy. Mrs. Azua testified, however, that D. T. A. developed a stutter for a few months after his mother's June 2009 release from jail, and he often refused to talk

with the mother when she called from prison. K. F. A. would talk to the mother on the telephone but was too young to realize that the person calling was her mother. The grandmother testified that the mother's incarceration negatively impacted the mother's ability to create a bond with K. F. A. and also negatively affected the mother's relationship with D. T. A., because the children did not see her.

Evidence was presented that the children had a bond with the Azuas, who were able to provide them a stable home and who desired to adopt them. Evidence also was presented that the children had a bond with the grandmother and great-grandmother, whom the Azuas allowed the children to visit. Mrs. Azua testified that, if the mother's parental rights were terminated and the Azuas were granted custody of the children, she would continue to allow the children to visit the grandmother and great-grandmother, and she would also allow the children's mother to have supervised visitation upon her release from prison.

No allegation was made or evidence presented that the mother had abused or acted violently toward the children. Evidence was presented, however, as to several instances during which the mother had acted violently toward or physically threatened a boyfriend, the grandmother, the great-grandmother, and the Azuas. The grandmother, when asked if she believed the mother had a "problem with violence," responded affirmatively. The great-grandmother testified that she believed the mother needed anger management counseling. The grandmother and great-grandmother also testified that the mother's prior boyfriends had criminal histories; her current boyfriend was incarcerated, and the great-grandmother intended for him to move into their house when he was released from prison.

In its order terminating the mother's parental rights, the juvenile court took judicial notice of its earlier proceedings. The court determined that clear and convincing evidence had been presented that the children were presently deprived, that the cause of their deprivation was lack of proper parental care and control, that the deprivation was likely to continue and was likely to cause serious physical, mental, emotional, or moral harm to the children, and that termination of the mother's parental rights was in the children's best interest. In support of its determination, the juvenile court found that the mother failed for a period of more than 12 months to complete her court-ordered reunification goals, including the payment of child support; that her relationship with the children had been negatively affected by her felony conviction and imprisonment and the children were not bonded with her as a parent figure; that D. T. A. had exhibited negative physical behavior in response to some of the mother's visits; that the mother had a history of choosing as partners men with histories of criminal convictions or activity; that

she had untreated anger management problems reflected by her use of physical violence against others; that the children had been doing well in the custody of the Azuas, who had made efforts to support the children's continued relationship with the grandmother and great-grandmother; and that the guardian ad litem had recommended termination of the mother's parental rights as being in the children's best interest.

1. As explained below, the juvenile court did not err in finding that there was clear and convincing evidence of three of the four requirements for a finding of parental misconduct or inability under OCGA § 15-11-94 (b) (4) (A) — deprivation, caused by the lack of parental care or control, which cause was likely to continue — but it failed to make sufficiently explicit findings regarding the fourth requirement — the likelihood of serious harm caused by continued deprivation — so as to allow for appellate review.

(a) *Deprivation*. The mother's continued incarceration at the time of the termination hearing authorized the court to find that the children were presently deprived. See OCGA § 15-11-2 (8) (defining "deprived child" to mean, inter alia, child who is without proper parental care or control); *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1) (645 SE2d 363) (2007) (children became deprived when their father, who was their sole legal guardian and provider, became incarcerated); *In the Interest of J. L. M.*, 204 Ga. App. 46, 48 (1) (418 SE2d 415) (1992) (children whose parent was incarcerated were deprived under OCGA § 15-11-2 (8), despite being in the temporary custody of loving guardians).

(b) *Lack of parental care or control as the cause of the deprivation*. In determining whether a parent's lack of care or control is the cause of the deprivation, the court is required to consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." OCGA § 15-11-94 (b) (4) (B) (iii). Here, evidence was presented that the mother's conviction of the felony of terroristic threats, see OCGA § 16-11-37 (a), and her incarceration therefor had negatively affected her ability to form a bond with K. F. A. and to maintain a relationship with D. T. A. See *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992) ("demonstrable negative effect" of parent's incarceration for felony conviction may be shown by circumstantial as well as direct evidence).

Furthermore, in determining whether a noncustodial parent's lack of care or control is the cause of the deprivation, the juvenile court is required to consider

> whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the

filing of the petition for termination of parental rights: (i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-94 (b) (4) (C). Evidence was presented to support the juvenile court's findings that the children were "not bonded with [the mother] as their parent figure," that she had not paid child support for more than twelve months, and that she had failed to complete some of the court-ordered reunification goals. Although the mother emphasized her attempts to maintain a relationship with the children and to meet some of the reunification goals, it was for the juvenile court to weigh her explanations in these regards. See *In the Interest of A. C.*, 285 Ga. at 836 (3).

(c) *The cause of the deprivation is likely to continue.* "[T]he court can consider a parent's past conduct in determining whether . . . conditions of deprivation are likely to continue." (Citation and punctuation omitted.) *In the Interest of B. T.*, 291 Ga. App. 604, 608 (c) (662 SE2d 656) (2008); see also *In the Interest of M. C. L.*, 251 Ga. App. 132, 135 (1) (a) (553 SE2d 647) (2001). "A parent's incarceration does not always compel the termination of parental rights, but it can support a termination when there are sufficient aggravating circumstances present." (Footnote omitted.) *In the Interest of M. C. L.*, supra at 134 (1) (a); see also *In the Interest of L. F.*, 203 Ga. App. at 522. Such aggravating circumstances may include a history of incarcerations for repeated criminal offenses, a determination that it is likely such criminal history will continue upon release, and a failure by the incarcerated parent to comply with reunification goals. *In the Interest of M. C. L.*, supra at 134-135 (1) (a).

Here, evidence showed that the mother had a history of violent interactions with others that had led to her convictions and incarceration, and there was no indication that the mother had taken any action toward resolving what was described at the hearing as her "anger management" problem. Evidence also showed that the mother had a history of choosing boyfriends with criminal backgrounds, including the mother's current boyfriend, who was incarcerated. And, as discussed above, the mother failed to complete all of her court-ordered reunification goals, including the payment of any child support, even during the time period when she was not incarcerated. This evidence supported the finding that the cause of the deprivation was likely to continue. See *In the Interest of R. D. B.*, 289 Ga. App. 76, 79 (1) (656 SE2d 203) (2007).

(d) *Likelihood of serious harm from continued deprivation.* "The juvenile court is required to make explicit findings as to the existence of parental misconduct or inability as defined in OCGA § 15-11-94 (b)." (Citations and punctuation omitted.) *In the Interest of D. W.,* 293 Ga. App. 468 (1) (667 SE2d 631) (2008). Accordingly, an order terminating parental rights must contain explicit findings supporting the conclusion that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. See *In the Interest of K. J.,* 226 Ga. App. 303, 307 (2) (b) (486 SE2d 899) (1997). A mere recitation that this legal requirement was met will not suffice. See id. "The trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached." (Citation and punctuation omitted.) *In the Interest of J. M.,* 251 Ga. App. 380, 383 (4) (554 SE2d 533) (2001).

Here, the juvenile court stated in its order that the children

have suffered, are suffering, and will continue to suffer in the future as a result of the profoundly detrimental and egregious conduct of [the mother], who [is] hereby found to be unfit, and the children are currently suffering and are in danger of suffering in the future, serious physical, mental, emotional and moral harm due to the mere continuance of the relationship with the [mother] on a visitation basis. . . .

This order did not state any specific facts that led the juvenile court to conclude that there was a likelihood of serious harm from continued deprivation, but cited only its general findings regarding the mother's unfitness and conduct. Moreover, in support of its conclusions, the juvenile court referenced earlier, apparently untranscribed proceedings. See generally OCGA § 5-6-41 (f) (permitting trial court, on proper suggestion or of its own initiative, to direct that omission in record be corrected). Without more specific factual findings on the issue of the likelihood of serious harm from continued deprivation, we have no basis to evaluate whether the juvenile court properly determined that clear and convincing evidence supported the court's conclusion on that issue. See *In the Interest of J. E.,* 309 Ga. App. 51, 57 (1) (d) (711 SE2d 5) (2011) (a finding that deprivation is likely to continue does not automatically support a finding that continued deprivation will harm the child; whether the facts authorizing the former finding also authorize the latter finding depends on the circumstances of the case); *In the Interest of A. T.,* 271 Ga. App. 470, 473 (610 SE2d 121) (2005) (evidence that a mother is unable to care for her children does not necessarily demonstrate that her current relationship with them is harmful).

Accordingly, we vacate the judgment of the juvenile court and remand the case with the direction to make appropriate findings of fact and conclusions of law, and to enter a new judgment based thereon. See *In the Interest of T. S.*, 310 Ga. App. 100, 104 (2) (712 SE2d 121) (2011); *In the Interest of S. W. J. P. D.*, 275 Ga. App. 272, 273 (620 SE2d 497) (2005). After this judgment is entered, the losing party shall be free to file another appeal. See id.

2. Having found it necessary to remand this case for further proceedings as to issues that are prerequisites for consideration of the question whether the court erred in finding that the termination of parental rights was in the children's best interest, we cannot reach that question. See generally OCGA § 15-11-94 (a), (b) (question of whether termination of parental rights is in child's best interest arises only after juvenile court has determined that there is clear and convincing evidence of parental misconduct or inability, which in turn requires determination that continued deprivation will cause or is likely to cause serious harm to child).

*Judgment vacated and case remanded with direction. Mikell and Dillard, JJ., concur.*

DECIDED OCTOBER 13, 2011.

*McDonald, Thames & Ray, Todd L. Ray, Joshua J. Smith*, for appellant.

*McCamy, Phillips, Tuggle & Fordham, Curtis A. Kleem*, for appellee.

