**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 3, 2014**

# In the Court of Appeals of Georgia

A13A1942. IN THE INTEREST OF C. M. AND I. M., children.

McFADDEN, Judge.

The mother of C. M. and I. M. appeals the termination of her parental rights, arguing that the evidence does not support the termination. She also challenges the juvenile court's decision not to place the children with a family friend. We find that sufficient evidence supports the termination. We also find that, pretermitting whether a parent has standing to challenge the placement of his or her children after his or her parental rights have been terminated, in this case the juvenile court did not abuse its discretion by declining to place the children with the family friend. We therefore affirm.

1. *Facts.*

On appeal of a juvenile court's order terminating a parent's rights, we view the evidence

> in the light most favorable to the juvenile court's ruling, and [our] review is limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. In this review, [we] must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations.

*In the Interest of D. T. A.*, 312 Ga. App. 26, 27 (717 SE2d 536) (2011) (citations and punctuation omitted).

Viewed in this light, the evidence shows that the mother has two children, C. M., who was eight years old at the time of the termination hearing, and I. M., who was four years old at the time of the hearing. The Department of Family and Children Services ("DFCS") first became involved with the family in 2004, and the children were first removed from the mother's custody in 2009 because of her precarious housing situation, her lack of income and an occurrence of domestic violence between the mother and the maternal grandmother. The children were placed in the guardianship of a family friend, who originally but mistakenly believed she was the paternal grandmother.

The mother did complete her case plan goals; after the children were removed from her custody, the mother obtained housing and employment, participated in counseling, and completed parenting classes. But she was unable to apply the parenting skills that she was taught, because although the mother was receptive to the teaching, she did not understand the concepts. The mother has an IQ score of 75, which puts her in the "borderline" range, just above the threshold of 70 for intellectual deficiency. Evidence was presented that the mother does not have the skills or the intellectual ability to parent the children, given their behavior issues. For example, she is unable to identify safety concerns, and the children therefore would be in danger if placed in her custody. The psychologist who evaluated the mother testified that even with additional counseling and parenting education, the mother is incapable of improving her parenting ability to a level sufficient to manage C. M., a difficult child. The psychologist and the counselor who tried to teach her parenting skills both testified that in order for the mother to have custody, she would need the constant help of an in-home parenting specialist.

The children's visits with the mother were routinely chaotic because the mother was not able to manage the children's behavior, and the visitation was terminated. C. M. was verbally and physically aggressive toward her mother, and the mother did not

know how to respond. I. M. engaged in dangerous behaviors, such as attempting to touch the gas heater, and the mother would not redirect him.

C.M. was removed from the guardian's custody in March 2011 because C. M.'s behavior was dangerous to herself and to the guardian. She was returned to the home, but in May of 2012, both children were removed from the guardian because the guardian had a physical altercation with her adult son.

C. M. has been hospitalized three times because of her extreme temper tantrums. One of the episodes began when her foster mother made a left turn instead of the usual right turn. C. M. is defiant and violent. At one of her counseling sessions, her therapist called the police because she would not stop smashing her fist on the glass windows. During a therapy session attended by both children., C. M. had to be physically restrained, and while she was restrained, I. M. acted wildly, pulling C. M.'s hair, jumping on the furniture, and throwing things.

C. M. has been diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder and reactive attachment disorder. I. M. is developmentally delayed. He has been diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder, mood disorder, and a learning disorder.

2. *Sufficiency of the evidence.*

The mother argues that the evidence fails to support the termination. OCGA § 15-11-94 sets forth the two-step procedure for terminating a parent's rights:

> First, the juvenile court must find parental misconduct or inability, which under OCGA § 15-11-94 (b) (4) (A) requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

*In the Interest of D. T. A.*, supra, 312 Ga. App. at 27.

(a) *Deprivation.*

The mother argues that the evidence was not clear and convincing that the children were deprived or that any deprivation was likely to continue. Acknowledging that the mother loves her children and wants to be a good mother, the court nonetheless found that the children are deprived because of the mother's inability to parent them due to her medically verifiable mental and emotional deficiencies. The court found that the deprivation is not likely to be remedied and is likely to cause harm to the children. The court found that in order to remedy the deprivation, another

5

adult would always need to be present "to make sure that the real parenting was done independent of the mother."

> Although [the mother] has completed . . . her case plan goals and wishes to be part of her child[ren's lives], the evidence shows that she lacks the mental capacity to care for [them] without around-the-clock assistance from others, something DFCS is not obligated to provide . . . . . The test must be whether the parent, ultimately standing alone, is capable of mastering and can effectively demonstrate the ability to utilize parenting skills. The majority of cases in this state dealing with factual situations of this type have enunciated a rule that in termination cases the welfare of a child is of paramount importance provided there is also evidence that the parent suffers from some mental disability that renders the parent unable to care for the child. This case clearly fits that mold. There is no dispute that as of the time of the hearing and for the foreseeable future, the . . . mother is unable to furnish proper parental care and control necessary for the child[ren]'s physical, mental and emotional health and that these conditions and causes of deprivation are likely to continue for the foreseeable future. As the uncontested evidence shows that [the mother] cannot independently fulfill her parenting responsibilities, we reach the same conclusion.

*In the Interest of H. F. G.*, 281 Ga. App. 22, 26-27 (1) (635 SE2d 338) (2006) (citations and punctuation omitted). Clear and convincing evidence, including the testimony of the psychologist who evaluated the mother, supports the juvenile court's

6

finding that the mother's intellectual ability is insufficient to enable her to parent her children safely. Moreover, there was testimony that the mother is incapable of improving her parenting ability, given her intellectual limitations. A rational trier of fact could have found by clear and convincing evidence that the children were deprived and that the deprivation was likely to continue. See *In the Interest of D. T. A.*, supra, 312 Ga. App. at 27.

(b) *Best interests*.

"The mother argues that the evidence was insufficient to show that it was in the [children's] best interest[s] to terminate her parental rights. The same evidence showing parental misconduct or inability may support this requirement, and it does here." *In the Interest of R. J. D. B.*, 305 Ga. App. 888, 895 (1) (c) (700 SE2d 898) (2010) (citation omitted). In addition to the evidence discussed above, there was evidence that the children's visits with their mother were disturbing to them and that they have made progress in foster care. This evidence supported the juvenile court's conclusion that terminating the mother's parental rights was in the best interests of the children. *In the Interest of K. N.*, 272 Ga. App. 45, 54 (b) (611 SE2d 713) (2005).

3. *Placement of the children*.

The mother argues that the children's best interests required their placement with the former guardian (the family friend who originally but mistakenly believed she was the paternal grandmother), instead of the foster parents with whom they were placed. Pretermitting whether a parent whose parental rights have been terminated has standing to challenge her child's placement, we find that the mother has not shown that the trial court abused its discretion.

The DFCS caseworker testified that returning the children to the guardian was not a viable option because of the guardian's inability to manage the children's behavior, the guardian's physical altercation with her son, and the chaotic nature of her home, given the children's need for structure, stability and individualized attention. The children's therapist testified that placement with the guardian would not be appropriate because the children have learned how to manipulate her. The juvenile court must place the child in a placement that serves the child's best interests. See *In the Interest of C. B.*, 300 Ga. App. 278, 280 (2) (b) (684 SE2d 401) (2009). As evidence supports the juvenile court's conclusion that placing the children with their former guardian is not in their best interests, we affirm.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*