**SECOND DIVISION**
**MILLER, P. J.,**
**BRANCH, J., and PETERSON, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A2049. IN THE INTEREST OF J. A. B. et al., children.

MILLER, Presiding Judge.

The mother of J. A. B., K. J. D., and A. D. D. appeals from the juvenile court's order terminating her parental rights.[1] We granted the mother's application for discretionary review, and now conclude that the juvenile court's order is insufficient to enable appellate review. Therefore, we vacate the termination order and remand this case.

As a threshold matter, we note that the new Juvenile Code applies to these proceedings even though the State filed the initial deprivation petition in 2013, because the State's termination petition was filed in September 2014, after the new

---

[1] The juvenile court also terminated the parental rights of J. A. B.'s putative father, and that ruling has not been appealed. The father of K. J. D. and A. D. D. is deceased.

code went into effect. *In the Interest of C. J. V.*, 333 Ga. App. 844, 847-48 (2) (777 SE2d 692) (2015) (applying the new code to a case in which the deprivation petition was filed in 2013 but the termination petition was filed in 2014). Therefore, we proceed under the current Georgia law.

We view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated. *In the Interest of A. B.*, 311 Ga. App. 629 (716 SE2d 755) (2011). Nevertheless, in conducting our review, we must proceed

> with the knowledge that there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. The right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances.

(Citations and punctuation omitted.) *In the Interest of C. J. V.*, 323 Ga. App. 283 (746 SE2d 783) (2013).

So viewed, the evidence shows that J. A. B. was born in July 2007, K. J. D. was born in September 2009, and A. D. D. was born in May 2011. In January 2013, the

2

mother, the children, and the mother's fiancé were driving through Georgia when a police officer stopped their vehicle in Canton. After finding marijuana in the car, the police officer arrested the mother's fiancé on drug charges and three counts of cruelty to children. The mother was also arrested for possession of less than one ounce of marijuana and three counts of cruelty to children. Aside from this brief interaction, the family has no connection to Georgia.

Based on the arrests, the Georgia Division of Family and Children Services ("DFCS") took the children into custody on January 13, 2013. The juvenile court issued an order for shelter care the next day and appointed a guardian ad litem. DFCS placed the children in foster care because the mother was incarcerated and the children had no relatives in Georgia.

On February 8, 2013, the children were adjudicated deprived.[2] The initial case plan called for reunification with the mother and temporary placement with a relative. In December 2013, DFCS placed the children with their grandmother in Indiana. In February 2014, the mother's case plan was changed to non-reunification.

---

[2] The new Juvenile Code uses the term "dependent" instead of "deprived." See OCGA § 15-11-2 (22); *In the Interest of C.J.V.*, supra, 333 Ga. App. at 847-48 (2). The distinction does not alter our analysis here.

3

In September 2014, DFCS filed a petition to terminate the mother's parental rights, which the juvenile court granted on February 2, 2015. The grandmother continues to have custody of and is willing to adopt the children, who are thriving in her care and are meeting all of their developmental milestones.

In its termination order, the juvenile court considered the testimony of the DFCS case worker, the court-appointed special advocate, the mother, and her fiancé. The juvenile court made the following factual findings and conclusions of law: (1) the children are dependent under OCGA § 15-11-2 (22) (A), the cause of the dependency is likely to continue and not be remedied, and the continued dependency will or is likely to cause serious physical, emotional, mental, and moral harm to the children; (2) the mother failed to complete all of the case plan requirements, including showing proof of housing and employment, and completing a psychological evaluation; and (3) the mother visited the children only sporadically, seeing her children five out of the fifteen scheduled visits and not at all for the prior sixteen months. The juvenile court then stated, "the Court, therefore, finds that the mother has abandoned her children." The juvenile court cited the subsection of the termination statute addressing abandonment and explained, "based on their abandonment and the mother's unresolved issues, the children continue to be dependent. . . . The Court

4

finds that it is in the children's best interest[s] that the mother's parental rights be terminated. . . ."

On appeal, the mother argues that the juvenile court erred in finding that the children are dependent and that the dependency is likely to continue or will not be remedied. She further argues that the juvenile court erred in finding that the dependency will or is likely to cause serious physical, mental, emotional, or moral harm to the children.

Under OCGA § 15-11-310 (2014),

> (a) In considering the termination of parental rights, the court shall first determine whether one of the following statutory grounds for termination of parental rights has been met:
>
> . . . .
>
> (4) A child is abandoned by his or her parent; or
>
> (5) A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

A dependent child is defined as an abused or neglected child in need of the court's protection, or a child without a parent, guardian, or legal custodian. OCGA § 15-11-2 (22) (A), (C) (2014). Abandonment is defined as "conduct on the part of a parent . . . showing an intent to forgo parental duties or relinquish parental claims." OCGA § 15-11-2 (1) (2014). To evaluate intent, the juvenile court may consider conduct such as failure to communicate meaningfully or regularly visit with the child for at least six months, § 15-11-2 (1) (A)-(B), and failure to participate in a court-ordered case plan, § 15-11-2 (1) (D). Importantly, to constitute abandonment, the conduct must actually show an intent to abandon in light of the rest of the record.

Once the juvenile court determines the statutory basis for termination, the juvenile court must consider whether termination is in a child's best interests. OCGA § 15-11-310 (2014). "When the court finds that any ground set out in Code Section 15-11-310 is proved by clear and convincing evidence and that termination of parental rights is in a child's best interests, it shall order the termination of the parent's rights." OCGA § 15-11-320 (a) (2014).

The statutory basis for termination is the prerequisite finding. *In the Interest of D. T. A.*, supra, 312 Ga. App. at 34 (2). Indeed, the statute itself mandates that the juvenile court must make a specific finding as to why the parents' rights are being

terminated. Under § 15-11-310, dependency and abandonment are separate grounds for termination. In this case, however, it is unclear whether the juvenile court intended to rely on dependency or abandonment to support its decision because the juvenile court appears to address dependency and abandonment interchangeably. For example, its order encompasses findings of dependency with the conclusion that the children have been abandoned. We cannot determine from the juvenile court's order whether it intended to find abandonment, dependency, or both as the statutory ground for termination. See *In the Interest of D. T. A.*, 312 Ga. App. 26, 33 (1) (d) (717 SE2d 536) (2011) (explaining that the juvenile court is required to make factual findings and "state not only the end result of that inquiry but the process by which it was reached.") (citation and punctuation omitted). Even the parties seem unsure of the juvenile court's order, focusing their arguments exclusively on dependency without mentioning abandonment, even though the juvenile court's order discusses abandonment several times.

Moreover, we have serious concerns with the factual record before us and whether it supports a finding of termination. For example, termination based on dependency requires a showing that continued dependency "will cause or is likely to cause serious physical, mental, emotional, or moral harm." OCGA § 15-11-310 (a)

(5). DFCS argues that the mother did a poor job of caring for her children. Even if this were a sufficient basis to remove the children from her care, it does not rise to the level of proof necessary to terminate the mother's parental rights. See *In the Interest of J. S. B.*, 277 Ga. App. 660, 663 (2) (d) (627 SE2d 402) (2006) (noting the "vague testimony" of the DFCS caseworker and explaining that a mother's inability to provide care does not mean her relationship with the children is detrimental).

For the juvenile court to base its decision on abandonment is also problematic on this record. Simply announcing that the mother has failed to visit the children, without taking into account the geographic difficulties and other obstacles that arose *after* DFCS removed the children, is hardly enough to support such a drastic result. Cf. *In the Interest of K. E. A.*, 292 Ga. App. 239, 240 (663 SE2d 822) (2008) (finding abandonment where non-custodial parent was unable to see children while incarcerated and then failed to take required steps upon his release). Nor can we condone basing a termination decision on the parent's alleged failure to submit paperwork to DFCS where there was other evidence to show compliance with the reunification plan. This literal form over substance is inconsistent with the burden placed on DFCS to support a termination proceeding.

DFCS relies on the testimony of the caseworker – the third or fourth one involved in this case – and the brief questions posed to the Court-appointed special advocate to support its argument. Such a paucity of evidence can hardly be enough to bring about the termination of rights. The burden on DFCS in termination cases is a heavy one, with good reason.

> Terminating a parent's rights, and thus forever foreclosing the possibility of restoring the natural parent-child relationship, is governmental extinguishment of the parent and child's constitutional right to familial relations. There is, then, no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. Accordingly, compelling facts are required to terminate parental rights.

(Punctuation and footnotes omitted.) *In the Interest of S. O. C.*, 332 Ga. App. 738, 743 (774 SE2d 785) (2015)

These concerns underscore our inability to discern from the juvenile court's order whether the juvenile court found dependency or abandonment as the basis for termination, and until the juvenile court has clarified its determination in this regard, we are unable to properly review the conclusion that termination is in the children's best interests. In other words, the conflicting legal conclusions "preclude an

intelligent review of the merits of the appeal." *Grantham v. Grantham*, 269 Ga. 413, 414 (1) (499 SE2d 67) (1998) (remanding a custody case for further factual findings and conclusions of law to enable appellate review). Accordingly, we vacate the termination order and remand this case to the juvenile court with direction to more fully develop the statutory ground or grounds for termination and the factual findings supporting its decision.

*Judgment vacated and case remanded with direction. Branch and Peterson, JJ., concur*.