**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** ***physically received*** **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2017**

# In the Court of Appeals of Georgia

A16A1610. IN THE INTEREST OF D. W. et al., children.

MCFADDEN, Presiding Judge.

We granted discretionary appellate review of the juvenile court's order terminating the parental rights of a mother to four of her minor children — eight-year-old D. W., six-year-old E. W., five-year-old T. W., and four-year-old A. W.[1] The mother argues on appeal that there was not clear and convincing evidence to support the juvenile court's conclusion that the cause of the children's dependency was likely to continue. Because the juvenile court's order does not specify which of its many detailed findings support her conclusion that the cause of the children's dependency was likely to continue, it is insufficient to enable appellate review of this issue. So we

---

[1] The order on appeal expressly does not address the mother's parental rights to a fifth child, who also was the subject of the termination petition. Accordingly, this appeal does not concern that fifth child.

vacate the judgment below and remand the case for entry of a properly supported order based on the evidence in the case.

1. *Facts and procedural posture.*

The evidence, viewed in the light most favorable to the juvenile court's decision, see *In the Interest of C. S.*, 319 Ga. App. 138, 139 (735 SE2d 140) (2012), shows that the children experienced a very chaotic, traumatic, and violent home life. Their father physically abused their mother, and their mother — a methamphetamine addict — made repeated allegations that their father physically and sexually abused the children. The children were removed from the mother's custody due to her addiction, and for several years, as their mother spent time in domestic violence shelters and rehabilitation facilities, the children alternated between the custody of the Department of Family and Children Services ("DFCS") and the custody of their father. Ultimately the father and mother reunited and later married.

This proceeding commenced in June 2014 when the mother made a new allegation against the father — that he was sexually abusing the oldest child, D. W. — and DFCS filed a complaint that led the juvenile court to remove all of the children from the parents' home and place them in foster care. The psychologist who initially evaluated the children at DFCS's request testified that the dysfunction in

their household "was having a very negative impact on the children. The children were all significantly disturbed, having severe problems." This psychologist believed that the children's behavior was consistent with sexual abuse or exposure.

When they entered foster care, the four children all displayed significant emotional and behavioral problems. DFCS initially attempted to place the children in the same foster home, but that placement was unsuccessful due to the children's disruptive behavior. At the foster parent's request, the four children were removed from that home. DFCS then placed D. W., T. W., and A. W. in one new foster home and E. W. in a different new foster home. The children received counseling, and all but A. W. showed emotional and behavioral progress in their new foster homes. A. W.'s behavior declined in the foster home with her two brothers, and shortly before the termination hearing she was removed from that home because of her aggressive and sexual behavior toward them. Her behavior improved when she was placed in a different foster home by herself. The two boys who remained in the same foster home — D. W. and T. W. — could not be in each other's presence unsupervised because of acts of aggression and sexual behavior between them, and at the time of the termination hearing T. W.'s behavior was beginning to decline. At the time of the termination hearing, only A. W. had a potential adoptive family.

The juvenile court adjudicated the children dependent as to both parents. As to the mother, the juvenile court found that she had stipulated to the following causes of the children's dependency: inadequate or unstable housing; unstable employment or income; methamphetamine abuse; neglect or lack of supervision; and domestic violence. The juvenile court found that the mother had also stipulated to the following as a cause of dependency: "Counseling needed to address mental health and behavioral needs of children. Children exhibit aggressive behaviors and sexually acting out on each other. Clearly, they have been exposed to inappropriate sexual content or witnessed sexual situations." The juvenile court initially directed DFCS to prepare a reunification case plan for the mother requiring her to become and remain drug- and alcohol-free; complete a substance abuse program and follow any recommendations made; submit to random drug screens; complete a psychological evaluation and follow any recommendations made; receive treatment for domestic violence; refrain from exposing the children to domestic violence; obtain and maintain safe, stable housing; maintain a stable, legal income; complete parenting classes and demonstrate skills learned; and maintain a bond with the children through regular visitation. Based on evidence presented at the termination hearing, the

juvenile court found that the mother had "actively worked, and completed, the requirements of her case plan."

Nevertheless, on May 22, 2015, DFCS petitioned to terminate the mother's parental rights to the children. DFCS alleged, among other things, that the children remained dependent due to the mother's inability to meet their mental health and behavioral needs. DFCS stated that "there exists parental misconduct or inability relative to the . . . children within the meaning of OCGA § 15-11-311 (a) (1) due to a medically verified deficiency of such children's mother's physical, mental, or emotional health that is of such duration or nature so as to render the mother unable to provide adequately for her children."

After receiving evidence at the termination hearing, the juvenile court entered an order terminating the mother's parental rights to the four children. (The juvenile court also terminated the father's parental rights, and the father has not challenged that order in this appeal. At the time of the termination hearing, the mother was attempting to serve the father with a complaint for divorce.)

2. *Applicable law.*

Georgia's new Juvenile Code applies to this case, because it concerns a juvenile proceeding commenced in 2014. See Ga. L. 2013, pp. 294, 514, § 5-1; *In the*

*Interest of M. F.*, 298 Ga. 138, 140 (1) n. 4 (780 SE2d 291) (2015). Like Georgia's former Juvenile Code, the new Juvenile Code provides for a two-step process for determining whether to terminate parental rights. A juvenile court must strictly follow this statutory process. *In the Interest of T. Z. L.*, 325 Ga. App. 84, 100 (1) (751 SE2d 854) (2013). In considering whether to terminate parental rights, the juvenile court must "first determine whether one of [five specified] statutory grounds for termination of parental rights has been met[.]" OCGA § 15-11-310 (a). The ground pertinent to this appeal requires the juvenile court to examine the circumstances and causes of a child's dependency, which is defined as the child's "abuse[ ] and neglect[ ] and . . . need of the protection of the court." OCGA § 15-11-2 (22). Under this ground, the juvenile court must determine whether the child's dependency is

> due to lack of proper parental care or control by his or her parent, [whether] reasonable efforts to remedy the circumstances have been unsuccessful or were not required, [whether] such cause of dependency is likely to continue or will not likely be remedied, and [whether] the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

OCGA § 15-11-310 (a) (5).

"If any of the statutory grounds for termination has been met, the [juvenile] court shall then consider whether termination is in a child's best interest[ ] after considering [several specified] factors[.]" OCGA § 15-11-310 (b). "In all proceedings under this article, the standard of proof to be adduced to terminate parental rights shall be by clear and convincing evidence." OCGA § 15-11-303. Consequently, "[o]n appeal from a juvenile court's decision to terminate parental rights, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found clear and convincing evidence that the parental rights should be terminated." *In the Interest of C. S.*, supra, 319 Ga. App. at 139 (citation omitted).

We cannot review a termination decision, however, if the juvenile court's order does not clearly identify the specific factual findings that support the determination that the statutory requirements for termination have been met. *In the Interest of D. M.*, 339 Ga. App. 46, 55 (2) (a) (793 SE2d 422) (2016); *In the Interest of J. A. B.*, 336 Ga. App. 367, 370 (785 SE2d 43) (2016); *In the Interest of D. T. A.*, 312 Ga. App. 26, 33 (1) (d) (717 SE2d 536) (2011); *In the Interest of G. K. J.*, 187 Ga. App. 443, 445 (3) (370 SE2d 490) (1988). "The trial judge is to ascertain the facts and to state not only the end result of that inquiry *but the process by which it was reached.*" *In the Interest*

*of J. M.*, 251 Ga. App. 380, 383 (4) (554 SE2d 533) (2001) (citation and punctuation omitted; emphasis supplied). A recitation that a legal requirement was met will not suffice. *In the Interest of D. M.*, supra; *In the Interest of D. T. A.*, supra.

3. *The juvenile court's order.*

While the juvenile court's order in this difficult and troubling case clearly reflects diligent and careful consideration, it does not provide us with the findings necessary for our appellate review. The juvenile court set forth many detailed factual findings, but she did not identify specific factual findings that authorized her conclusion that cause of the children's dependency was likely to continue.

To review the evidence supporting the juvenile court's conclusion that the cause of dependency was likely to continue, we must first determine what the juvenile court found to be the cause of the children's dependency. See *In the Interest of N. T.*, 334 Ga. App. 732, 742 (3) (780 SE2d 416) (2015) (question is whether there is clear and convincing evidence that specified causes of dependency are likely to continue). Consequently, although on appeal the mother challenges only the juvenile court's conclusion that the cause of the children's dependency was likely to continue, this conclusion is intertwined with the conclusion regarding the existence of present

8

dependency, and we therefore set forth all of those conclusions to provide context for our analysis:

> Based upon these facts [the detailed factual findings set forth earlier in the order], the Court finds that [the four children that are the subject of this appeal] are dependent children as to their mother due to her lack of proper parental care or control. . . . In addition to the findings of fact made throughout this Order, court orders have been entered finding these children to be dependent and those orders stand today. The children are dependent now due to the horrific emotional and behavioral instability of each of the . . . four children.
>
> . . .
>
> Reasonable efforts to remedy the circumstances of dependency have been made but were unsuccessful. Truthfully, given the history of three prior sojourns in foster care, DFCS could have elected to file for termination of parental rights immediately. The prior Court orders document the efforts made. Despite the children being in highly structured and nurturing environments, they continue to struggle with their emotional and behavioral challenges. [A. W.] is only just now beginning to see the light but could revert quickly with a return with her siblings.
>
> . . .

The cause of dependency is likely to continue and will not likely be remedied. [The father] is gone. [The mother] is new in her recovery. The behaviors of all four children could not be managed by the very best of parents. If they are together, their traumatic memories are triggered and they attack each other. [The mother] would be part of those traumatic memories even for those children who say they want to go home to her.

In these paragraphs, the juvenile court attempted in several ways to support her conclusion that the cause of the children's present dependency is likely to continue. She referred generally to the numerous pages of factual findings set forth in other places throughout the order, but this reference did not satisfy the requirement that she state the process by which she reached her conclusion by setting forth the facts upon which she relied for that conclusion. See *In the Interest of D. T. A.*, supra, 312 Ga. App. at 33 (1) (d) (juvenile court's citation to general findings regarding mother's unfitness and conduct insufficient); *In the Interest of J. M.*, supra, 251 Ga. App. at 383 (4) (juvenile court failed to set forth facts supporting conclusion on one of the statutory requirements for termination).

The juvenile court referred to the children's past dependency, stating that the grounds established in earlier orders would have supported termination and that those

10

grounds "stand today," but her finding that the mother subsequently completed her case plan is not consistent with the implication that those earlier grounds of dependency persisted. See *In the Interest of J. E. E.*, 235 Ga. App. 247, 249-250 (509 SE2d 147) (1998) (evidence that parent completed case plan is relevant to determination of whether cause of child's deprivation was likely to continue). Similarly, she cited the mother's recent recovery from past drug addiction, but she made no finding as to whether the mother's past drug use had "the effect of rendering [her] incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of [the] child[ren]." OCGA § 15-11-311 (a) (2). While past drug use is a factor in determining whether the cause of the children's dependency is likely to continue, it cannot alone support a conclusion that that statutory requirement for termination has been met. See *In the Interest of J. V. J.*, 329 Ga. App. 421, 426 (765 SE2d 389) (2014).

The juvenile court did expressly state that the children's "horrific emotional and behavioral instability" was the cause of their present dependency, and it is clear from her order that she concluded this instability was likely to continue if the four children were returned to live in the same household. There certainly was evidence to show that the children's past dependency caused them to be severely unstable and

11

that, because of this instability, they might not ever be able to live together again. But the children's instability is a *result* of their past dependency, not a *cause* of their present dependency that would support a termination of parental rights. Under the Juvenile Code, to support the termination of parental rights, the cause of a child's dependency must be the "lack of proper parental care or control by [the child's] parent[.]" OCGA § 15-11-310 (a) (5). Notably, the juvenile court made no finding as to whether the mother had a "medically verified deficiency of [her] physical, mental, or emotional health that is of such duration or nature so as to render [her] unable to provide adequately for [the] child[ren]." OCGA § 15-11-311 (a) (1). See *In the Interest of C. J. V.*, 323 Ga. App. 283, 287 (746 SE2d 783) (2013) (concluding that there was not clear and convincing evidence to show cause of deprivation was likely to continue, in part because there was no evidence that mother had a verified mental or physical condition indicating she was incapable of caring for her children). To the contrary, the juvenile court expressly stated that *no* parent — not even the best parent — could manage the four children in a single household.

In summary, the juvenile court in her order set forth many detailed facts and stated the conclusion that the cause of the children's present dependency was likely to continue. But in attempting to state the process by which that conclusion was

12

reached, the juvenile court failed to point to specific facts that supported the conclusion. While she referred generally to all of her factual findings, she emphasized specific facts that were contradicted by some of her other factual findings or were insufficient to support her conclusion. "A correction of the[se] error[s] may or may not alter other findings of fact made by the juvenile court and thus may or may not affect the ultimate judgment." *In the Interest of E. R. D.*, 172 Ga. App. 590 (323 SE2d 723) (1984) (citations and punctuation omitted). For that reason, we must vacate the judgment and remand for a properly supported order. See *In the Interest of D. M.*, 339 Ga. App. at 56 (2) (a) (vacating judgment and remanding case for "more appropriate and explicit findings of fact and conclusions of law" and a "new judgment based on these findings and conclusions" where failure of order to make specific factual findings on particular statutory requirement for termination left appellate court with no basis to evaluate whether conclusion was properly supported by clear and convincing evidence); *In the Interest of J. A. B.*, supra, 336 Ga. App. at 372 (vacating termination order and remanding case to more fully develop statutory ground for termination and factual findings supporting decision where deficiencies in order preclude intelligent review of merits of appeal).

*Judgment vacated and case remanded. McMillian, J., concurs. Miller, P. J., concurs in the judgment only.*