**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1299. IN THE INTEREST OF K. G. V., A CHILD.

WATKINS, Judge.

Sharon O'Connor, the maternal grandmother and permanent guardian of K. G. V., appeals from the trial court's order denying her petition for adoption and termination of parental rights. O'Connor argues[1] that the trial court erred in finding that: (1) there was insufficient evidence of abandonment; and (2) termination and adoption were not in K. G. V.'s best interest. Because the trial court's factual findings do not support its decision to deny the petition when analyzed under the appropriate statutory framework and relevant case law, we vacate and remand for a redetermination of these issues.

---

[1] We also thank the amici for their helpful brief.

Viewed in the light most favorable to the trial court's decision,[2] the record shows the following. K. G. V. was born in 2011. In December 2012, the juvenile court found that K. G. V. was dependent due to the mother's drug abuse and the father's incarceration. The court placed K. G. V. in O'Connor's custody in 2014, where K. G. V. has remained since. During a review in 2015, the juvenile court found that the mother and father had severe drug abuse problems and other issues. As to the father, the court found K. G. V. dependent due to, among other reasons, "[u]nresolved substance abuse issues[, i]nsufficient visitation and bonding with the child[, u]nresolved criminal issues[, and f]ailure to form a parent-bond with his daughter."

In January 2016, O'Connor filed a petition for termination of parental rights, or in the alternative a petition for permanent guardianship. The juvenile court denied termination but granted permanent guardianship. The juvenile court gave the parents specific goals they needed to achieve to terminate the permanent guardianship and regain custody.

In July 2018, O'Connor filed a petition in superior court for adoption and termination of the mother's and father's parental rights. O'Connor sought to

---

[2] See *Price v. Grehofsky*, 349 Ga. App. 214, 215 (825 SE2d 594) (2019).

terminate their parental rights under OCGA § 19-8-10 (a) (1), (2), (3) and (5) on the grounds that the parents had abandoned the child; that the father had suffered a recent traumatic brain injury that rendered him incapable of surrendering his parental rights; and that the child was dependent due to lack of proper parental care and control based on, among other things, the parents' chronic unrehabilitated substance abuse, felony convictions, and history of incarceration. The petition further alleged that the continued instability between the child and parents was causing harm to the child.

The trial court dismissed the petition for adoption on the ground that O'Connor already had permanent guardianship. We reversed, holding that "a permanent guardian who otherwise meets the eligibility criteria for adoption is not disqualified from petitioning to adopt a child[.]"[3]

The court held a hearing on O'Connor's petition in October 2022 and denied O'Connor's petition in November 2022. The court had "concerns" in terminating the parent's parental rights because permanent guardianship granted O'Connor "the rights needed to effectively protect and raise the child." The court found that "the parents have neither abandoned the child nor are they unknown." With respect to K.

---

[3] *In the Interest of K. G. V.*, 358 Ga. App. 61, 68 (853 SE2d 376) (2020).

G. V., the court found that it "was clear that the minor child has a secure and stable home with [O'Connor] and there is no evidence that the child is suffering either physically, mentally, or emotionally. Lacking additional evidence, the Court is unable to find that terminating parental rights would further the best interests of the child." As to adoption, the court similarly found that there was no evidence that K. G. V. was suffering. The court noted that "[t]he child has a secure and stable home, and [thus] guardianship is sufficient[.]" This appeal from O'Connor followed.

> In an adoption case, the trial judge sits as both judge and jury. The trial court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this Court. On appeal, we construe the evidence to uphold the trial court's findings and judgment, but as to questions of law, we apply a de novo standard of review.[4]

With these guiding principles in mind, we now turn to O'Connor's claims of error.

1. O'Connor argues that the trial court erred in finding insufficient evidence of abandonment.[5]

---

[4] (Citations and punctuation omitted.) *Newlin v. Adamar*, 363 Ga. App. 456-457 460 (871 SE2d 458) (2022).

[5] Neither parent filed a response brief.

Under OCGA § 15-11-310, in order to terminate a parent's parental rights, a court first determines whether one of the statutory grounds has been met, which includes whether a "child is abandoned by his or her parent[.]"[6] Similarly, in order to adopt a child, a petitioner can show by clear and convincing evidence that, among other options, the "[c]hild has been abandoned by that parent[.]"[7] "Abandonment" is defined in the Juvenile Code as

> any conduct on the part of a parent, guardian, or legal custodian showing an intent to forgo parental duties or relinquish parental claims. Intent to forgo parental duties or relinquish parental claims may be evidenced by:
> (A) Failure, for a period of at least six months, to communicate meaningfully with a child;
> (B) Failure, for a period of at least six months, to maintain regular visitation with a child;
> (C) Leaving a child with another person without provision for his or her support for a period of at least six months;
> (D) Failure, for a period of at least six months, to participate in any court ordered plan or program designed to reunite a child's parent, guardian, or legal custodian with his or her child;

---

[6] OCGA § 15-11-310 (a) (4).

[7] OCGA § 19-8-10 (a) (1).

(E) Leaving a child without affording means of identifying such child or his or her parent, guardian, or legal custodian and:

> (i) The identity of such child's parent, guardian, or legal custodian cannot be ascertained despite diligent searching; and
>
> (ii) A parent, guardian, or legal custodian has not come forward to claim such child within three months following the finding of such child;

(F) Being absent from the home of his or her child for a period of time that creates a substantial risk of serious harm to a child left in the home;

(G) Failure to respond, for a period of at least six months, to notice of child protective proceedings; or

(H) Any other conduct indicating an intent to forgo parental duties or relinquish parental claims.[8]

"[T]o constitute abandonment, the conduct must actually show an intent to abandon in light of the rest of the record."[9]

---

[8] OCGA § 15-11-2 (1).

[9] (Citation and punctuation omitted.) *In the Interest of C. S.*, 354 Ga. App. 133, 137 (1) (840 SE2d 475) (2020).

Here, O'Connor presented evidence that the parents had not visited K. G. V. in three years, that they failed to form a meaningful bond with her, that previous visitation was very inconsistent, that the parents failed to pay child support, and that the parents failed to complete the court-ordered plans.

The trial court in its order found that the parents had not abandoned K. G. V. but instead suffered from substance abuse issues and the father's traumatic brain injury. These findings, however, do not justify the trial court's determination that the parents did not abandon K. G. V. The trial court did not seem to consider the statutory framework listed above or the relevant case law on this issue.[10] Accordingly, we remand for the court to reconsider whether the parents abandoned K. G. V. in light

---

[10] Compare, e.g., *In the Interest of C. S.*, 354 Ga. App. at 138-139 (1) (clear and convincing evidence supported the trial court's finding that the parent abandoned the child when the parent had not had any contact with the child for three years, the parent had a drug abuse problem which he made no efforts to remedy, the parent had been repeatedly incarcerated, the parent had not formed a bond with the child, and the parent had contacted the child only a handful of times), with *Woodall v. Johnson*, 348 Ga. App. 820, 826 (1) (a) (i) (823 SE2d 379) (2019) (evidence did not support a finding of abandonment where the parent paid child support (albeit sometimes late), provided proof of a clear drug screen a year before the hearing, sent gifts to the child, requested visitation, and attempted to contact the child on a daily basis).

of the statutory framework and relevant case law listed herein, and to set forth appropriate factual findings supporting its decision.[11]

2. O'Connor argues that the trial court erred in finding that termination and adoption were not in the best interest of K. G. V.

If the court determines that one of the statutory bases for termination has been met, the court then considers whether termination is in the best interest of the child after considering the following factors:

> (1) Such child's sense of attachments, including his or her sense of security and familiarity, and the continuity of affection for such child;
> (2) Such child's wishes and long-term goals;
> (3) Such child's need for permanence, including his or her need for stability and continuity of relationships with a parent, siblings, and other relatives;
> (4) Any benefit to such child of being integrated into a stable and permanent home and the likely effect of delaying such integration into such stable and permanent home environment;

---

[11] See *In the Interest of J. A. B.*, 336 Ga. App. 367, 372 (785 SE2d 43) (2016) (remanding for the court "to more fully develop the statutory ground or grounds for termination and the factual findings supporting its decision"); *In the Interest of D. T. A.*, 312 Ga. App. 26, 34 (1) (717 SE2d 536) (2011) (remanding for the court "to make appropriate findings of fact and conclusions of law, and to enter a new judgment based thereon").

(5) The detrimental impact of the lack of a stable and permanent home environment on such child's safety, well-being, or physical, mental, or emotional health;

(6) Such child's future physical, mental, moral, or emotional well-being; and

(7) Any other factors, including the factors set forth in Code Section 15-11-26 [listing 20 additional factors] considered by the court to be relevant and proper to its determination.[12]

Similarly, in order to adopt, a petitioner must show "that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home."[13]

The trial court found that K. G. V. was in a secure and stable home and there was no evidence that K. G. V. was suffering physically, emotionally, or mentally. The court also found that the parental relationship "may be amended in the future." "Lacking additional evidence," the court thus denied O'Connor's petition, noting

---

[12] OCGA § 15-11-310 (b).

[13] OCGA § 19-8-10 (a) (5).

that "the child may enjoy her guardian's full benefits without an adoption proceeding or terminating parental rights."

At the hearing, K. G. V. testified that she wanted to be adopted by O'Connor. K. G. V.'s therapist testified that the uncertainty surrounding the adoption had exacerbated K. G. V.'s anxiety. The therapist told the court that K. G. V. needed the "security and stability" that adoption provided. K. G. V.'s guardian ad litem agreed that K. G. V. needed "closure" and recommended that the court grant the adoption petition.

Given this evidence, and the other evidence presented at the hearing, the trial court erred in finding that O'Connor presented no evidence of suffering, and thus that adoption was not in K. G. V.'s interest.[14] The court additionally erred in finding that permanent guardianship afforded the same benefits to K. G. V. as adoption would. Adoption provides more permanency than a permanent guardianship — a factor the

---

[14] Cf. *Hewlett v. Hewlett*, 349 Ga. App. 267, 271 (825 SE2d 622) (2019) (reversing grant of adoption petition where "[t]here was no testimony from a caseworker, counselor, psychologist, or guardian ad litem opining that harm would result from [the child] remaining with the grandparents in the current situation, nor was there any evidence that continuing a parental relationship, in some form, with the mother would harm [the child]").

court should consider in its best interest analysis.[15] Although labeled "permanent,"

a court can revoke or modify a permanent guardianship when there has been a material

change in the circumstances of the child or guardian, and when in the child's best

interest.[16] Indeed, the juvenile court in this case provided a parenting plan to follow

if the parents wanted to revoke the guardianship and regain custody. Finally, we again

emphasize that there is nothing in the Adoption Code that prohibits a permanent

guardian from adopting the child.[17]

Accordingly, the superior court erred in applying the facts to the statutory

definition of abandonment and in failing to following the proper statutory framework

for analyzing the best interest of the child. We thus vacate the trial court's order

denying O'Connor's petition for adoption, and remand for the court to reconsider

whether a statutory basis for termination has been met and whether adoption and

termination would be in K. G. V.'s best interest, in light of the statutory framework

---

[15] See OCGA §§ 15-11-310 (b); 19-8-10 (a).

[16] See OCGA § 15-11-244 (c).

[17] See *In the Interest of K. G. V.*, 358 Ga. App. at 68.

and relevant case law listed herein, and to set forth appropriate factual findings supporting its decision.[18]

*Judgment vacated and case remanded with direction. Barnes, P. J., and Land, J., concur.*

---

[18] See *In the Interest of D.T.A.*, 312 Ga. App. at 34 (1).